IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:17-00217

DAVID RAY PELFREY

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Suppress Evidence (ECF No. 35). In it, Defendant requests that this Court suppress the evidence gathered at his apartment pursuant to a search warrant. *Mot. to Suppress Evidence*, ECF No. 35, at 1-2. Defendant contends that the factual basis provided in the application for that search warrant was insufficient to support a finding of probable cause. *Id.* 20. Central to his argument, Defendant claims that the factual basis supporting the warrant application predominately relied upon an anonymous tip that was electronically submitted to the National Center for Missing and Exploited Children ("NCMEC"). *Id.* 2. Because the tip was given anonymously, Defendant contends that it lacked the necessary reliability to support the probable cause required for the issuance of the search warrant for Defendant's home. *See Def.'s Mem. in Supp. of Mot. to Suppress Evidence*, ECF No. 36, at 8-13. However, the Court, as explained below, finds that the factual information provided in the application sufficiently supported a finding of probable cause, and at the very least, the *Leon* "good faith exception" will rectify any short comings contained within the warrant application. Therefore, the Court **DENIES** Defendant's Motion to Suppress Evidence (ECF No. 35).

## I. BACKGROUND

This case stems from an anonymous tip received by the NCMEC via its CyberTipline on June 4, 2017. The tip identified, by name, a sixteen-year-old female ("Minor Female 1") that it said had been missing from Chicago, Illinois since May 9, 2017. The tip asserted that Minor Female 1 was being "sex trafficked" and that "[s]he is currently . . . confined by David Pelfry (approx. age 39)." *Ex. B to Mot. to Suppress Evidence*, ECF No. 35-2, at 4. Further, the tip identified where Minor Female 1 would be located: "his home 925 18th Street West, Huntington, West Virginia 25704." *Id.* With particularity, the tip also provided that Minor Female 1 had "been there since at least 5/13/17 having been transported across state lines for the purpose of prostitution." *Id.*

The tip then continued, providing information and links regarding both Minor Female 1's and Defendant's various social media sites, and pointing out that the two were "friends" on Facebook. *Id.* Included among the links was one to Minor Female 1's supposed page on a site called SeekingArrangment.com. *Id.* According to the tipster, Minor Female 1 was "shopped around" on the website. *Id.* SeekingArrangement.com is a forum where "members" seek a relationship, which typically involves some financial support being given. *See generally Ex. D to Mot. to Suppress Evidence*, ECF No. 35-4. The website refers to those "supporters" as "Sugar Daddies" or "Sugar Mommas;" and the site also defines "Sugar Babies" as "[a]ttractive people looking for the finer things in life." *Id.* at 5. On the member page of Minor Female 1, her "Lifestyle Expectations" were listed as "Moderate." *Ex. B to Mot. to Suppress Evidence*, at 23.

Despite the length of the tip, the tipster did not provide his or her name, location, or contact number. Investigators at the NCMEC attempted to locate the anonym tipster using an IP address search. That search indicated that the IP address, from which the tip originated, traced back to

Poland. *Id.* at 15. But, the search also indicated that the tipster had intentionally sought to hide his/her IP address by using a datacenter proxy to "mask" the real IP address, and a TOR browser that enables internet users to largely hide their IP address by providing layers of encryption and IP address redirection. *See id.* at 16; *see also Gov.'s Reply to Def.'s Supp. Mem.*, ECF No. 58, at 4-5.

Over the course of multiple hours, individuals with the NCMEC sought to confirm the abundance of information contained within the anonymous tip. *See id.* at 7-17. Ultimately, the next day, June 5, 2017, the NCMEC forwarded the tip, with supplemental notes from the NCMEC's confirmatory investigation (together referred to as "Cybertip Report" or "Cybertip"), to the FBI detachment located within this District. *Gov.'s Resp.*, at 2. The local FBI detachment then sent the Cybertip Report to the Huntington Police Department ("HPD").

After receiving the Cybertip Report, the HPD reviewed it, and confirmed some of the online information noted in the tip. *Id.* at 3. Specifically, officers with the HPD located Minor Female 1's profile on SeekingArrangement.com. *Id.* With that confirmation of Cybertip information, Sgt. Matt Null, Cpl. Jason Davis, and Sgt. Eddie Prichard of the HPD went to Defendant's home to conduct a "knock and talk." *Id.* After a few knocking attempts, Defendant answered the door. *Id.* at 4.

The HPD officers told Defendant that they were looking for a missing girl who was reported to be at his residence. *Id.* Defendant gave the officers permission to enter his home and to speak with Minor Female 1, who Defendant acknowledged was in the residence. *Id.*; *Mot. to Suppress Evidence*, at 8-9. Upon entering, Sgt. Null and Cpl. Davis located Minor Female 1, confirmed her identity, and engaged in a lengthy conversation with her. *Id.* at 4-5; *Mot. to Suppress Evidence*, at 8-9. Sgt. Prichard remained outside with Defendant while the other two officers spoke with Minor Female 1. *Id.* at 5. Later, officers at Defendant's residence relayed information to

Detective Backus so that he could apply for a search warrant for the home. *Id.* At roughly the same time, officers asked Defendant go with them down to the police station to answer questions. *Id.*; *Mot. to Suppress Evidence*, at 10. Defendant complied with this request, and later provided incriminating statement after being *Mirandized. Id.* at 5, 8; *Mot. to Suppress Evidence*, at 10, 13-15; *Ex. H to Mot. to Suppress Evidence*, ECF No. 35-8, at 2.

In applying for the warrant, Detective Backus provided the following factual recitation:

> On today's date a tip from the National Center for missing [sic] and Exploited Chidlren [sic] that the defendant was in possession of the victim (K.G.) [Minor Female 1] a missing 16yr old, who was reported as a missing and endangered juvenile from Chicago, Illinois. The victim was declared missing on 05/09/2017 & tip said the victim was transported across state lines for the purposes of prostitution . . . Upon being asked how she met the defendant, the victim stated they met on the computer.[1]

*Ex. F to Mot. to Suppress Evidence*, ECF No. 35-6, at 2. According to the affidavit, Detective Backus submitted to the reviewing judge that these facts supported probable cause to search Defendant's home, under suspicion for violation of W. Va. Code § 61-3C-14b. *Id.* at 2, 5-7. The reviewing judge agreed that this recitation supported probable cause, and issued the search warrant. *Id.* at 4.

Pursuant to the warrant, police officers retrieved various items from Defendant's apartment. Most relevantly, officers seized two cell phone, as well as other provocative costumes and toys. *Gov.'s Resp.*, at 5; *see also Ex. G to Mot. to Suppress Evidence*, ECF No. 35-7, at 3.

---

[1] The Court has omitted the sentence about what officers observed during what Defendant has contested is a warrantless curtilage search. *See infra* pp. 14-15. That sentence provided that: "Upon officers [sic] approach to the listed address, the victim was observed pulling on pink panties." *Ex. F to Mot. to Suppress Evidence*, ECF No. 35-6, at 2. As it opined during the Motions Hearing, the Court finds that the information contained within the omitted sentence, except for its clear implication that officers visited Defendant's home, does not provide any material contribution to the probable cause determination. Thus, the Court will neither include it in this excerpt from the warrant application, nor reference it in the Court's probable cause analysis.

Officers obtained separate warrants for the cell phones and, after a subsequent forensic analysis, they found various images and videos of Minor Female 1 and Minor Female 2[2], as well as text message conversations between Defendant and Minor Female 1, in addition to those between he and Minor Female 2, on those devices. *Id.*

On April 9, 2018, Defendant filed his Motion to Suppress Evidence and Supporting Memorandum (ECF No. 35 & 36), requesting that the Court not only suppress all the evidence emanating from the search of Defendant's home, but also that it suppress the statement Defendant gave to police.[3] After the Government responded (ECF No. 44), Defendant filed his Reply (ECF No. 47). During a Motions Hearing held on April 23, 2018, the Court heard argument on the suppression motion, as well as other motions. The Court did not rule on the Motion to Suppress Evidence, and instead took it under advisement and required that the parties file additional briefing on the motion. *Omnibus Order*, ECF No. 54, at 3. Both the Government and Defendant filed Supplemental Memoranda (ECF Nos. 55 & 56), and the Government filed a Reply to Defendant's

---

[2] "Minor Female 2" is a separate alleged victim of Defendant, identified in Count Five of the Superseding Indictment returned against Defendant. *Superseding Indictment*, ECF No. 45, at 5.

[3] In addition to requesting the suppression of physical evidence found pursuant to the search warrant for Defendant's residence, Defendant also requests that the Court not allow the Government to use statements given by Defendant to police. *Def.'s Mem. in Supp. of Mot. to Suppress Evidence*, at 20-24. Defendant argues that because there was no intervening circumstances between the point at which police illegally seized him and the time that he gave self-incriminating statements, the statements were not a "product of [his] will." *Id.* at 20. On those grounds, Defendant vies for suppression of his statements. Although the Government briefed its argument against suppressing Defendant's incriminating statements, the Government did not assert whether it planned to offer Defendant's statement during trial. Given that this Court finds sufficient probable cause in the affidavit for search warrant application, and that the Government has not asserted that it plans to offer Defendant's statements in its case-in-chief, the Court believes it is premature to suppress the statements in question. Therefore, the Court **DENIES, AS MOOT**, the portion of Defendant's Motion to Suppress Evidence that requests suppression of the incriminating statements that Defendant made to officers at the police station.

Supplemental Memorandum (ECF No. 58). With the benefit of this briefing, the Court is prepared to rule.

## II. DISCUSSION

As an essential constitutional protection, the Fourth Amendment ensures "the right of the people to be secure in their persons [and] houses . . . ." U.S. Const. amend. IV; *see also United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004). The warrant requirements described in the Constitution animate this right, providing practical steps to protect the aspirational notion. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To safeguard this right, an independent judicial officer must agree with the probable cause determination, and issue the warrant, before it may be executed. *See Hodge*, 354 F.3d at 309 (providing the requirement that an independent judicial officer must issue the warrant before officers can conduct the search). Additionally, courts have created the exclusionary rule to deter the degradation of the quintessential guarantee of security. *See United States. v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule renders inadmissible the fruits of impermissible searches. *Id.*

However, when officers comply with the requirements of the warrant application process, a court will generally not suppress evidence gathered pursuant to the warrant. The oath or affirmation of the warrant application must "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *see also United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) ("[A] reviewing court must consider only the information presented to the magistrate who issued the warrant."). But courts should not read the affidavits in a hypertechnical and legalistic fashion. *Id.* at 235-36. Instead, magistrates

and courts should read affidavits in the commonsense manner in which the mostly lay authors have composed them. *Id.* at 235-36, 238. Likewise, a reviewing court must show "great deference" to the probable cause determination of another judge, and avoid an "after-the-fact" *de novo* review. *See Hodge*, 354 F.3d at 309; *Gates*, 462 U.S. at 236.

Although probable cause eludes an exacting definition, it "exists where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the location identified to be searched. *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (internal quotation marks omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Implied within this conclusion, a magistrate must believe there exists "a nexus . . . between the suspected criminal activity and the place to be searched." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (internal quotation marks omitted) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)). Given the totality of the circumstances, if a magistrate determines that "there is a fair probability that contraband or evidence of a crime will be found in a particular place," then the probable cause requirement has been met. *Gates*, 462 U.S. at 238.

Defendant argues that the factual predicate for the search warrant cannot provide the required probable cause for two reasons: (1) the affidavit "misidentified" the tip as coming from the NCMEC instead of the anonymous source who actually submitted the tip, and that this materially mislead the reviewing judge, *see Def.'s Supp. Mem.*, ECF No. 56, at 1-6; and (2) that the anonymous tip lacked sufficient reliability to substantiate a finding of probable cause, *Def.'s Mem. in Supp. of Mot. to Suppress Evidence*, at 8-13. Also, Defendant argues that the *Leon* good faith exception cannot save any deficiencies in the search warrant application. *Def.'s Reply*, ECF No. 47, at 10-14

First, Defendant challenges the search warrant affidavit's characterization of the Cybertip's source. In his Supplemental Memorandum, Defendant labels the search warrant affidavit's reference to the NCMEC as the source of the Cybertip as a "misidentification." *Def.'s Supp. Mem.*, ECF No. 56, at 1. The Defendant argues that this wording suggests that the tip came from a "reputable quasi-law enforcement source." *Id.* Contrary to the apparent reliability of the NCMEC as a source of criminal information, Defendant points out that that the information obtained from the NCMEC revealed that the tip was actually from an anonymous source whose IP address traced to Poland. *Id.* at 5-6. Defendant further argues that the NCMEC is a reputable source of information involving crimes against children, and that by implying that the tip came from the NCMEC, the attesting officer added an imprimatur of reliability that a tip from an anonymous source would not have. Because the officers knew the tip was from an anonymous source, Defendant argues that including the reference to NCMEC was intentionally, or recklessly, misleading. *Id.* at 6. Therefore, the affidavit neither supports probable cause, nor is entitled to the good-faith exception. *See generally id.* The Court, however, does not agree.

Even anonymous tips may supply probable cause if shown to be reliable. *See Gates*, 462 U.S. at 244. While corroboration of easily observed, nonculpable details may not establish reliability, *see Florida v. J.L.*, 529 U.S. 266, 268, 271-72 (2000) (concluding that a tip that a young black man, wearing a plaid shirt, was carrying a gun around a certain location lacked sufficient reliability), the supporting details here provide a sufficient measure of reliability. As the affidavit states, the tip identifies pertinent and accurate information about Minor Female 1: her name; that she was 16 years old; that she had been reported missing since May 9, 2017; that she was from Chicago, Illinois. *Ex. B to Mot. to Suppress Evidence*, at 4. These assertions were apparently investigated and confirmed by the NCMEC, as reflected in the Cybertip Report submitted to law

enforcement. *Id.* at 8. The tip also identifies the defendant and his residence in Huntington, West Virginia. *Id.* at 4. Likewise, during their investigation, the NCMEC confirmed this information. *Id.* at 7, 10-13. Further, the tip provided information regarding the social media profiles of both Minor Female 1 and Defendant, pointed out their "friendship" on Facebook, noted Minor Female 1's Seekingarrangement.com profile, and provided links to all of the referenced sites. *Id.* at 4. As the Cybertip Report details, the NCMEC case manager for this tip found the Facebook account that seemingly belonged to Minor Female 1. *Id.* at 8. And although the Seekingarrangement.com member profile that had allegedly belonged to Minor Female 1 was no longer active at the time of the NCMEC investigation, the anonymous tipster had provided what appears to be a screen-capture picture of Minor Female 1's Seekingarrangement.com profile. *Id.* at 4, 8, 9, 23.

Based upon the extensive investigatory efforts performed by the NCMEC, and even treating the cyber tip as a purely anonymous tip, the officers had a reasonable basis to characterize the tip as coming from the NCMEC. As a rough illustration, only two pages of the Cybertip Report consist of the information reported by anonymous tipster. *Ex. B to Mot. to Suppress Evidence*, at 4-5. However, the NCMEC's investigatory notes comprise ten pages of the Cybertip Report. *Id.* 7-16. At the very least, the attesting officer's characterization of the origin of the tip cannot be termed so misleading as to require nullification of probable cause that was supplied by the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (concluding that allegations of an affiant's negligence or innocent mistake are insufficient to require further inspection regarding a faulty warrant). The extensive confirmatory investigation performed by the NCMEC, however, does not constitute the entirety of the corroboration of the anonymous tipster's information.

Once the HPD received the Cybertip Report that contained the NCMEC notes showing its investigative efforts in verifying the tip's information, the HPD officers also undertook their own

corroboration of the Cybertip's information. As proffered by the Government, officers investigated the online profiles identified in the tip. *Gov.'s Resp.*, at 3. After the online aspect of the corroboratory investigation, officers then went to Defendant's residence to further confirm the prediction of the anonymous tipster that Minor Female 1, a missing 16 year-old, from a distant city, would be found with Defendant, at the exact address in Huntington, West Virginia that was provided. *Id.* Indeed, upon the officers arriving at the identified residence, Defendant admitted to officers that Minor Female 1 was inside the house. So too, after Defendant gave officers permission to enter the residence and speak with Minor Female 1, Minor Female 1 confirmed that she and Defendant had met over the computer. *Ex. F to Mot. to Suppress Evidence*, at 2. The warrant application affidavit notes the corroboration the fact that Minor Female 1 was indeed with Defendant at his residence, and identified that in the course of officers' investigation of the tip, Minor Female 1 acknowledged that she met Defendant on the computer.

Next, Defendant claims that the affidavit lacked sufficient information to support a claim that any criminal conduct had taken place or that evidence of a crime would be found. Where a supporting affidavit fails to connect suspected criminal activity to the place to be searched, neither probable cause is demonstrated, nor will the good-faith exception save the affidavit's shortcomings. *See United States v. Lull*, 824 F.3d 109, 119 (4th Cir. 2016) (citing *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993)) (reiterating the requirement for a search warrant under the case law in this Circuit that there be a nexus between the place to be searched and items to be found); *see also Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). The affidavit states that the "tip said the victim was transported across state lines for the purpose of prostitution." *Ex. F to Mot. to Suppress Evidence*, at 2. The application accompanying the affidavit includes "Attachment A" which accuses Defendant of a state law felony involving use of a computer to solicit a minor

four years younger to commit an illegal act, serially listing various sex crimes, including prostitution. *Id.* at 5; *see* W. Va. Code § 61-3C-14b (including within its provisions those crimes listed in article eight of that chapter, which prohibits prostitution in § 61-8-5). As already noted, officers stated that Minor Female 1 told them that she "met" Defendant "on the computer." *Id.* at 2. Given this information on how the two met, and in light of corroboration of almost every piece of information contained within the highly detailed anonymous tip, the HPD officer could reasonably rely upon the Cybertip information.

The corroboration of other details noted above also provide indicia of reliability for the allegation of criminal conduct. *See United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993) ("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct.") Criminal conduct in which the victim is a child who is being subjected to sexual abuse, child pornography, or prostitution often is not instantly verifiable by interviewing the child. Here, verification of key details about the missing child, her location, and Defendant give weight to the tip's claim that she may have been induced by Defendant, through their social networking, to travel from her home state to West Virginia for an illicit purpose. The Cybertip Report discusses the Facebook connection between Defendant and Minor Female 1 and the evidence that the child herself may have utilized dating sites and posted photographs, apparently claiming she was nineteen instead of her real age.

Ultimately, the substantial corroboration of the anonymous tip by both the NCMEC and HPD officers supports the probable cause finding of the issuing judge. Importantly, not only did the investigators confirm the essential, and detailed, information about Minor Female 1 and Defendant provided by the anonymous tipster, but the officers also corroborated the tipster's prediction that Minor Female 1 would be found at a certain residence in Huntington, West Virginia,

hundreds of miles away from where she went missing. This type of accurate predictive information further corroborates an anonymous tip, and bolsters its reliability and value. *See J.L.*, 529 U.S. at 270-71 (discussing *Alabama v. White*, 496 U.S. 325 (1990), and explaining that the anonymous tipster's accurate prediction contributed to the reliability); *Gates*, 462 U.S. at 244 ("Because an informant is right about some things, he[/she] is more probably right about other facts . . . including the claims regarding the [suspect's] illegal activity."(internal citations and quotation marks omitted)); *see also Lalor*, 996 F.2d at 1581 n.5 (explaining the Supreme Court cases of *Illinois v. Gates* and *Alabama v. White*, consisted of predictive tips which were corroborated by investigation).

Based upon the substantial corroboration of the anonymous tip through investigation, as well as the other information contained within the affidavit, the Court finds that the affidavit substantiated the finding of probable cause. Anonymous tips can support the finding of probable cause when corroborated through investigation, and shown to be reliable. *See Gates*, 462 U.S. at 244. The Court believes that the extensive corroboration of detailed information provided in the tip demonstrates the reliability of its information. In light of the "great deference" accorded to the judge's finding of probable cause in issuing the warrant, *see U.S. v. Leon*, 468 U.S. 897, 914 (1984) ("[T]he preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination."), the Court finds that the affidavit supporting the search warrant application satisfied the probable cause requirement.

Even if the affidavit had not properly supplied sufficient probable cause, the Court finds that suppression of the evidence would be inappropriate due to the application of the *Leon* good faith exception. Under that exception to the exclusionary rule, "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance

on the warrant was 'objectively reasonable.'" *Doyle*, 650 F.3d at 467 (internal quotation marks omitted) (quoting *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004)). In other words, even if a warrant is subsequently invalidated, "a court should not suppress the fruits of a search conducted under the authority of a warrant . . . , unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 922 n. 23). There are four instances in which the *Leon* good faith exception will not prevent the suppression of evidence:

> (1) If the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 [(1979)]; (3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if under the circumstances of the case the warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Doyle*, 650 F.3d at 467 (internal quotation marks omitted) (quoting *United States v. DeQuasie*, 373 F.3d 509, 519-20 (4th Cir. 2004)).

None of the four instances that prohibit the application of the *Leon* good faith exception exist in this case. As discussed, to the extent that the judge was misled due to the categorization of the tip as originating from the NCMEC, the Court finds that this statement was neither made with knowledge of its falsity, nor with a reckless disregard of the truth. *See supra* pp. 8-10. Instead, the identification of the tip as coming from the NCMEC was reasonable based upon the extensive corroborative work done by the NCMEC regarding the tipster's information. Likewise, the Court has already found that the affidavit supporting the warrant substantiated the issuing judge's finding of probable cause. *See supra* pp. 10-12. Therefore, in this case, neither the second, third, nor fourth instances prohibiting the application of the *Leon* good faith exception apply. While fulfilling his

judicial role, the issuing judge properly determined that the affidavit supported a finding of probable cause, and a reasonable officer executing the warrant could presume that the warrant was valid. *See Lalor*, 996 F.2d at 1583 (finding that although the warrant application was deficient, it was "not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable. Indeed, two judicial officers have determined that the affidavit provided probable cause to search."). Therefore, even if the affidavit supporting the warrant application did not provide probable cause, the *Leon* good faith exception would prevent the evidence in question from being suppressed.

Defendant also vies for the suppression of evidence upon four other legal premises: (1) there was an initial warrantless search within the curtilage of Defendant's residence that lead to the discovery of incriminating evidence, *Mot. to Suppress Evidence*, at 16-18; (2) a second warrantless search resulted from the police officers' entry of Defendant's apartment and inspection of the interior, *id.* at 18-20; (3) the search warrant application identified a West Virginia statute that could not be properly charged because of Minor Female 1's age, *id.* at 22-23; and (4) the police officers conducted an unlawful custodial arrest when they seized Defendant and detained him for a prolonged period both outside of his residence and later at the Huntington Police station, *id.* at 23-26. The Court, however, also finds those lines of argument unconvincing.

Concerning Defendant's unlawful curtilage search argument, the Court previously opined during the Pretrial Motions Hearing that the information allegedly gleaned from the "curtilage search"—that officers saw Minor Female 1 "pulling on pink panties" as they approached the residence—would not be considered in determining whether the warrant application satisfied the probable cause standard. Therefore, even if the search was unlawful, the Court finds the information resulting from that search is not material. *See U.S. v. Doyle*, 650 F.3d 460, 468 (4th

Cir. 2011) (citing *Franks v. Delware*, 438 U.S. 154, 155-56 (1978) and *United States v. Gray*, 528 F.3d 324, 328 (4th Cir. 2008)) (providing that a warrant will only be voided where the impermissible information in the warrant "was necessary to the finding of probable cause"). The Court does not reach a conclusion as to whether either a curtilage search occurred or, if it did occur, whether it was unlawful or not.

Likewise, the Court finds that any information resulting from the "second warrantless search" does not affect the probable cause determination. The affidavit for the search warrant application did not reference or include information from any unpermitted aspect of what Defendant calls the "second warrantless search." And the Government responded that it "does not intend to introduce during its case-in-chief any of the 115 photographs taken by HPD [during their time inside Defendant's residence prior to the search warrant.]" *Gov.'s Resp.*, ECF No. 44, at 1. The Court must also note that Defendant "gave law enforcement permission to enter the residence to talk to Minor Female 1." *Id.* at 4. Where Defendant gave police officers permission to enter his home, where the Government has asserted that it does not intend to submit into evidence the pictures taken during the officers' time in the home, and where the officers did not base the warrant application upon any unpermitted inspection of Defendant's home, the Court believes that the "second warrantless search" has no bearing upon the factual predicate for the search warrant. *See Doyle*, 650 F.3d at 468.

With regard to Defendant's contention that the search warrant application identified an inapplicable West Virginia statute, the Court disagrees. Defendant argues that the code provision cited in the warrant application, West Virginia Code § 61-3C-14b, which prohibits the use of a computer to solicit a minor to commit one of the covered illegal sexual acts, does not apply in this instance. *See* W. Va. Code § 61-3C-14b. Defendant claims that because Minor Female 1 was

sixteen years old at the time, she had attained "the age of consent to engage in sexual activities with anyone her age or older." *Mot. to Suppress Evidence*, at 2 (citing W. Va. Code § 61-8B-2(c)(1)). Defendant's argument, however, ignores the fact that § 61-3C-14b does not only prohibit the solicitation of a minor to engage in sexual activities via a computer, but it also prohibits the use of a computer to solicit a minor to engage in prostitution. *See* W. Va. § 61-3C-14b (including within its prohibited solicitations, those covered in article eight of the code chapter, which provides for the prohibition of prostitution in § 61-8-5). Because the statutory provision cited in the warrant application was proper and applicable, the Court rejects Defendant's argument on this point.

Finally, the Court refuses to adopt Defendant's last argument that the prolonged seizure and detention of Defendant outside of his residence and later at the police station constituted an unlawful custodial arrest. The Court finds that, to the extent that Defendant was seized, the seizure was permissible. After Defendant had given permission to the police officers to enter his home and speak with Minor Female 1, Minor Female 1 confirmed her identity and notified the officers that she had met Defendant on the computer. *Mot. to Suppress Evidence*, at 24; *Gov.'s Resp.*, at 4-5. The facts that substantiated the probable cause for the warrant existed shortly after the Defendant was required to stand outside of his residence. *See United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) ("[T]he standard of 'reasonableness' typically is satisfied by a showing that the police had probable cause to conclude that the individual seized was involved in criminal activity." (citing *Dunaway v. New York*, 442 U.S. 200, 213-14 (1979))). Therefore, the police officers had probable cause to seize and detain Defendant for, at the minimum, the time that he spent outside of his home. To the extent that Defendant was seized without probable cause, this short delay was permissible given the need to secure the apartment—within which there was a missing minor—while police obtained a search warrant for the premises. *See Illinois v. McArthur*, 531 U.S. 326,

331-34 (2001) (finding that preventing a suspect from entering his home for a two hours was permissible while waiting for a search warrant, and analyzing similar cases which found brief detentions, pending further investigation, permissible).

As explained above, the Court **DENIES**, **AS MOOT** the portion of Defendant's Motion to Suppress Evidence that requests suppression of the incriminating statements that Defendant made to officers at the police station, and the Court **DENIES** the remainder of Defendant's Motion to Suppress Evidence (ECF No. 35).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

    ENTER:    May 10, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE